IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SMITH,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant.<br>_____ / | No. C 10-00212 WHA<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO INCREASE AMOUNT OF CLAIM** |

**INTRODUCTION**

In this personal injury action brought under the Federal Tort Claims Act, plaintiff moves to increase the amount of his initial claim. For the reasons stated below, the motion to increase the amount of the claim is **GRANTED**.

**STATEMENT**

In August 2005, plaintiff was allegedly injured in an accident at a USPS facility in San Ramon, California, and sustained injuries to his foot and leg. Plaintiff was treated at the emergency room for his injuries and continued to receive treatment at Kaiser Hospital in Hayward for the fourteen months following the accident. Plaintiff also attended physical therapy from October 2005 to March 2006 (Sladden Decl. Exh. B; Turnage Decl. Exh. F).

After the accident, plaintiff was under the care of Dr. Cheng at Kaiser from September 2005 through October 2006. In April 2006, Dr. Cheng recommended job retraining "to no more than 4 hours of standing, walking, no lifting beyond 50 pounds, no stair-climbing and no walking

on uneven ground." He also recommended that plaintiff see a psychiatrist for post-traumatic stress disorder (Sladden Decl. Exh. B at 7–8, 66). Dr. Cheng considered plaintiff's condition to be "permanent and stationary" as of May 2006. He also noted plaintiff had a "scar along the medial quad" in May 2006, but he did not mention the possibility of surgery when discussing future medical care. In fact, Dr. Cheng stated in May 2006 that "[f]uture medical care should be allowed for 3–4 visits a year to the orthopaedic surgeon, [and] treatment using anti-inflammatory medications." Dr. Troy, a qualified medical examiner, confirmed the permanent and stationary diagnosis in July 2006. Dr. Troy further stated, "it is conceivable that [plaintiff] might require some surgical intervention in the future but, if the fracture is not severe, this would be rather unlikely" (Sladden Decl. Exh. B at 14, 24–25, 61–62).

In August 2006, plaintiff filed an administrative claim with the USPS. That claim sought $550,000 in damages and stated:

> Robert Smith's prognosis remains very poor. He still suffers from severe pain in his right leg and he experiences flare-ups of stiffness, pain and tenderness in proportion to his activities. Furthermore, Robert Smith cannot stand for more than 3 hours on his feet as a result of the incident. Thus, the cumulative effect of said accident has resulted in severe emotional distress and undue hardship to Robert Smith.

The claim also asserted that plaintiff could not begin employment in a position previously offered to him and that he was unable to work and suffered income loss (Turnage Decl. Exh. A).

Allegedly unbeknownst to plaintiff, his attorney, Mr. Johnson, was facing possible discipline with the state bar. He was ineligible to practice law as of January 2007 and resigned with charges pending in March 2007. Also in March 2007, plaintiff underwent surgery on his foot for the first time (Smith Decl. ¶ 5; Turnage Decl. Exh. B).

Plaintiff then retained Attorney Guy Odom. In March 2007, Attorney Odom sent a letter to the USPS stating his intent to amend plaintiff's claim to reflect the costs of a surgery on the injured ankle. The letter did not provide a new claim amount, and Attorney Odom never actually amended the claim. Attorney Odom fell ill, and his illness forced him to quit practicing law. According to plaintiff, Attorney Odom did not work on plaintiff's case during this time

2

(Turnage Decl. ¶ 8, Exh. C).  Attorney Odom did, however, file this action in district court in January 2010 (Dkt. No. 1).

In April 2011, plaintiff's current attorneys, Glen Moss and Patricia Turnage, substituted in as his counsel (Dkt. Nos. 23–24).  Attorney Moss and Attorney Turnage referred plaintiff to Dr. Mann, who examined the extent of his injuries.  Plaintiff asserts that two surgeries recommended by Dr. Mann were unforeseeable at the time the claim was filed and that the surgeries will result in unforeseen permanent scarring and permanent loss of mobility.  Plaintiff further alleges that he will suffer from greater emotional distress than originally contemplated as well as a diminished employment outlook (Smith Decl. ¶¶ 5–6, 13, 16; Turnage Decl. ¶¶ 9–11, 13).

Plaintiff now moves under Section 2675 of Title 28 or, in the alternative, FRCP 6(b) to increase the value of his original claim from $550,000 to $1,500,000.  He alleges that a combination of:  (1) surgery and permanent scarring from the first surgery, (2) the cost of a second surgery plus additional scarring, (3) greater emotional distress in connection with the second surgery, (4) loss of motion due to the fusion of the right foot, and (5) extensive wage loss "greatly increase the damages value of the claim" (Turnage Decl. ¶¶ 15–16).  This order follows full briefing and a hearing.

**ANALYSIS**

1. **LEGAL STANDARD**.

A claim brought under the FTCA must first be submitted to the appropriate federal agency and denied by that agency before an action can commence against the United States in federal district court.  28 U.S.C. 2675(a).  The FTCA imposes a statutory cap on damages "in excess of the amount of the claim presented to the federal agency" with only two limited exceptions.  28 U.S.C. 2675(b).  *First*, increased damages are allowed "based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency."  *Second*, increased damages are allowed "upon allegation and proof of intervening facts, relating to the amount of the claim."  *Ibid.*

3

The burden is on plaintiff to show that any amendment to his claim is based on one or both of the exceptions to the statutory cap. *See Spivey v. United States*, 912 F.2d 80, 85 (4th Cir. 1990). In determining whether a claimant meets one or both of the exceptions in Section 2675(b), an objective standard is applied and the court determines whether a claimant's injuries were "reasonably foreseeable at the time the original claim was filed." *See Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988). The FTCA, however, does not hold claimants to a standard that charges them with "knowing what the doctors could not tell [them]." *Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985). Even so, due diligence on the part of the plaintiff is expected:

> [W]hether the plaintiff is seeking an increase under the rubric of "newly discovered evidence" or "intervening facts," one of the key issues is foreseeability. If the condition was reasonably foreseeable at the time the claim was filed, an increase will not be allowed. On the other hand, if it was not . . . [then] an increase may be allowed.

*Von Bargen v. United States*, No. C 06-04744 MEJ, 2009 WL 1765767, at *2 (N.D. Cal. June 22, 2009).

### 2. PLAINTIFF'S BURDEN TO MEET EXCEPTIONS TO THE STATUTORY CAP.

#### A. Plaintiff's Contentions.

Plaintiff contends that he did not know he would need to have surgery at the time his claim was filed, and his claim did not take into account the costs of the first surgery or the second surgery (Smith Decl. ¶ 3). He has since had one surgery and received a recommendation for a second surgery. The first surgery resulted in permanent scarring on his foot. Plaintiff anticipates that he will have additional scarring as a result of the second surgery (Turnage Decl. ¶ 13). The first surgery caused plaintiff emotional distress and the second surgery is anticipated to cause more emotional distress, which the initial claim failed to take into account. Moreover, he asserts that his future employment prospects have also diminished as a result of the first surgery and anticipated second surgery (Smith Decl. ¶¶ 14–16).

4

1    Plaintiff filed his administrative claim in August 2006. It included no mention of any

2 surgery or permanent scarring. His claim stated (Turnage Decl. Exh. A):

3  Robert Smith's prognosis remains very poor. He still suffers from
   severe pain in his right leg and he experiences flare-ups of
4  stiffness, pain and tenderness in proportion to his activities.
   Furthermore, Robert Smith cannot stand for more than 3 hours on
5  his feet as a result of the incident. Thus, the cumulative effect of
   said accident has resulted in severe emotional distress and undue
6  hardship to Robert Smith.

7  As a result of the incident, Robert Smith was unable to begin an
   employment [sic], which was offered to him on August 19, 2005 at
8  an annual salary rate of $41,600.00 and a start date of August 29,
   2005 . . . As a result of the incident Robert Smith has been unable
9  to work and he has suffered a substantial loss of income.

10 The initial claim did not indicate plaintiff would have to undergo any surgery to his foot in order

11 for it to heal. The claim was made in 2006.

12    Plaintiff asserts that he first learned he would need surgery in 2007. After the first surgery

13 in March 2007, he learned he would have permanent scarring on his foot. Moreover, plaintiff is

14 currently awaiting a second surgery. Plaintiff asserts that this evidence constitutes "newly

15 discovered medical evidence" because he had no personal knowledge of it before his claim was

16 filed (Smith Decl. ¶¶ 3, 5–6).

17         **B.   Section 2675(b) Standard.**

18    Evidence is considered "newly discovered" under Section 2675(b) if it was not reasonably

19 foreseeable at the time the claim was filed. Plaintiff's administrative claim was filed in August

20 2006, so the question is whether his asserted "newly discovered evidence" was reasonably

21 foreseeable by that date.

22    Our circuit has not yet decided what constitutes "newly discovered evidence" under

23 Section 2675(b), but the Fifth Circuit has considered this question. In *Low v. United States*,

24 795 F.2d 466, 471 (5th Cir. 1986), the court of appeals reversed an award of damages exceeding

25 the plaintiff's initial claim. The evidence showed that the plaintiff knew her son would suffer

26 from "cerebral palsy, seizure disorder, blindness, deafness and mental retardation" at the time

27 the claim was filed, no new conditions had developed, and his condition had not worsened.

28 The plaintiff knew "that the worst-case prognosis for [her son] was one of great severity." *Ibid.*

5

1  The district court allowed an increase in her claim because the full extent of the baby's condition
2  could not have been known at the time the claim was filed — he was not even one year old at the
3  time. The appellate court disagreed. It concluded that this had not been newly discovered
4  evidence. It was merely evidence that bore "on the precision of [the] prognosis." *Id.* at 470;
5  *see also Kielwien v. United States*, 540 F.2d 676, 680 (4th Cir. 1976) (finding that the plaintiff
6  could not increase her claim where later "diagnoses and advice were . . . cumulative and
7  confirmatory of what plaintiff had largely already been told").

8  In contrast to *Low*, however, the Fifth Circuit earlier affirmed a damages award beyond
9  the statutory cap to a plaintiff who sustained a broken arm and a dislocated shoulder. *United
10 States v. Alexander*, 238 F.2d 314, 315 (5th Cir. 1956). After the plaintiff had filed his claim, "it
11 was discovered that his shoulder was not responding to treatment, had become aggravated, and an
12 operation would be required." *Id* at 316. The court found that the evidence supported the finding
13 that the plaintiff and his doctor did not know about the need for surgery, and it could not have
14 been ascertained that his shoulder would not heal without surgery at the time his claim was filed.
15 The plaintiff did not have subjective knowledge of the injury and it was not reasonably
16 foreseeable. *Id.* at 318; *see also Michels v. United States*, 31 F.3d 686, 688 (8th Cir. 1994)
17 (holding that "a known injury can worsen in ways not reasonably discoverable by the claimant
18 and his or her treating physician" and could constitute "newly discovered evidence").

19                **C.    Plaintiff's Pre-Administrative Claim Knowledge.**

20  Here, plaintiff was under the care of Dr. Cheng for about a year after the accident. He
21 also attended approximately six months of physical therapy. During that time, there was no
22 mention in plaintiff's medical records from Dr. Cheng of any need for surgery on plaintiff's foot.
23 In fact, plaintiff's condition was considered to be "permanent and stationary" as of May 2006.
24 Dr. Cheng also stated in May 2006 that "[f]uture medical care should be allowed for 3–4 visits a
25 year to the orthopaedic surgeon, [and] treatment using anti-inflammatory medications."

26  Plaintiff was also examined by a qualified medical examiner, Dr. Troy. He was the only
27 doctor to mention surgery in the medical reports provided by the parties. An orthopaedic
28 surgeon, he stated in a report dated July 2006 that "it is conceivable that [plaintiff] might require

6

1  some surgical intervention in the future but, if the fracture is not severe, this would be rather
2  unlikely." Dr. Troy spent 35 minutes with plaintiff and generated a twelve-page report that was
3  sent to the Disability Evaluation Unit. Even if Dr. Troy discussed his findings with plaintiff, the
4  report said surgery was unlikely and further declared (on page one): "No treatment relationship is
5  established or implied. This medical-legal evaluation is based only on the current information
6  and records submitted. *It is solely the treating physician's responsibility to determine the*
7  *patient's differential diagnoses and subsequent needs for medical treatment*" (Sladden Decl. Exh.
8  B). Thus, Dr. Troy's report is not enough to overcome plaintiff's evidence and declaration stating
9  that surgery was never discussed, and he had no knowledge of its need before his claim was filed
10 (Smith Decl. ¶ 3).

### D. Surgeries.

12  Plaintiff's knowledge and ability to ascertain a prognosis regarding surgery are more akin
13 to the facts of the *Alexander* decision than the *Low* decision. The plaintiff in *Alexander* had no
14 reason to believe surgery on a known shoulder injury would be required when even his doctors
15 did not think it would be necessary. The plaintiff could not be held responsible for "knowing
16 what the doctors could not tell him." *Fraysier*, 766 F.2d at 481. So too here. This order finds
17 that plaintiff had no subjective knowledge of a need for surgery on his foot, and in light of his
18 medical records and doctor's opinion, his lack of knowledge is objectively reasonable.

19  Defendant argues that plaintiff's knowledge up until the day USPS issued a written denial
20 of his claim should be considered for purposes of this motion. Not so. Although defendant is
21 correct that plaintiff could have amended his claim until the day it was denied on July 15, 2009,
22 Section 2675(b) states that new evidence "not reasonably discoverable *at the time of presenting*
23 *the claim to the federal agency*" is a valid basis for increasing the claim. 39 C.F.R 912.5(b);
24 (Sladden Decl. Exh. C). Moreover, "a claim shall be deemed to have been presented when the
25 U.S. Postal Service receives from a claimant . . . an executed Standard Form 95." 39 C.F.R
26 912.5(a). Plaintiff executed Form 95 and presented it to the USPS on August 22, 2006 (Turnage
27 Decl. Exh. A). His claim was therefore "deemed to have been presented" on August 22, 2006,

7

and any knowledge plaintiff had of his injuries after that date is not relevant to deciding this motion.

### E. Permanent Scarring.

The United States contends that plaintiff had previous knowledge of permanent scarring. It points to a letter dated May 2006 wherein Dr. Cheng noted a scar along plaintiff's "medial quad" (Sladden Decl. Exh. B). Even assuming that plaintiff knew this, there are still two problems. *First*, the letter did not say anything regarding the permanency or size of the scar. *Second*, the scar was in a wholly different area — the upper leg — from the one constituting the "newly discovered evidence" — the current scarring on his foot from the first surgery and the additional future scarring from a second surgery. The notation of plaintiff's upper thigh scarring is not enough evidence to say plaintiff knew or should have known that he would have permanent scarring on his foot, the result of multiple foot surgeries.

### F. Employment Outlook.

Plaintiff, however, also bases a portion of his increased claim on the fact that he learned that he "was never going to be able to return to the same type of employment that [he] had been able to perform in the fifteen years prior to the subject accident. [His] employment before the accident always involved lifting heavy objects, loading and unloading trucks, driving forklifts and driving trucks" (Smith Decl. ¶ 6). This is information plaintiff knew or should have known prior to having his surgery in 2007 and prior to filing his claim in August 2006.

Dr. Cheng stated as early as January 2006 that he had discussed work modifications with plaintiff. Dr. Cheng stated in a letter to insurance, "I think that the only thing he can consider right now is a sit-down job, or sedentary job." In an April 2006 letter to insurance, Dr. Cheng recommended plaintiff get job retraining "to no more than 4 hours of standing, walking, no lifting beyond 50 pounds, no stair-climbing and no walking on uneven ground." Dr. Cheng then found plaintiff's restrictions to be permanent, declaring in a May 2006 insurance letter that plaintiff "went back to his warehouse job and was unable to do so and he is now deemed permanent and stationary with permanent restrictions." The only change in his restrictions from April to May was plaintiff was limited to lifting no more than 40–50 pounds versus no lifting beyond 50

1  pounds (Sladden Decl. Exh. B). Finally, plaintiff's initial claim even stated that "[a]s a result of
2  the incident Robert Smith has been unable to work and he has suffered a substantial loss of
3  income." Plaintiff was aware that he would have permanent work restrictions and would be
4  unable to return to his line of work before his claim was filed. Plaintiff's permanent work
5  restrictions are neither "newly discovered evidence" nor "intervening facts."

### G. Emotional Distress.

Moreover, plaintiff's initial claim was partly based on "severe emotional distress and undue hardship." In a letter to insurance dated April 2006, Dr. Cheng wrote that plaintiff "is developing flash-backs and stress and having difficulty sleeping and he states that he is afraid of going back to work due to flash-backs from post-traumatic stress when the leg was caught in the hydraulic lift." Dr. Cheng also recommended in that same letter that plaintiff see a psychiatrist (Sladden Decl. Exh. B). The evidence shows that plaintiff knew that he suffered from severe emotional distress after the accident, but he bases his new claim partly on more emotional distress related to the new surgeries. This is not the "newly discovered evidence" contemplated by Section 2675(b). This is evidence that merely "bears on the precision of [the] prognosis." *Low*, post-traumatic stress disorder after the accident. Emotional distress is not "newly discovered evidence" or an "intervening fact."

Defendant also requests that a decision on this motion be delayed until the close of discovery. Defendant does not cite to any authority requiring a delay or even suggesting a delay at this time would be proper. On the present record, the amendment will be allowed. If discovery reveals facts warranting a rejection of the enlarged claim, then perhaps a motion to bar the enhanced claim will be granted.

9

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to increase the amount of his claim under the FTCA is **GRANTED**.

**IT IS SO ORDERED.**

Dated: October 3, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE