1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10  ROBERT SMITH,                              No. C 10-212  WHA
11          Plaintiff,
12  v.                                          **ORDER GRANTING IN PART,**
                                                **DENYING IN PART MOTION**
13  UNITED STATES OF AMERICA,                   **FOR SUMMARY JUDGMENT**
    UNITED STATES POSTAL SERVICE,               **AND DENYING MOTION**
14  TIMOTHY MUNSIL, and DOES 1–20,              **TO STRIKE**
    inclusive,
15
16  _____/
17
18                        **INTRODUCTION**

19       In this personal-injury action, defendant United States, moves for summary judgment and

20  moves to strike the declaration of Scott Luba.  For the reasons stated below, the motion for

21  summary judgment is **GRANTED IN PART AND DENIED IN PART**.  The motion to strike is **DENIED**.

22                         **STATEMENT**

23       Plaintiff Robert Smith claims that his right leg was injured when it was struck by a

24  hydraulic lift at a United States Postal Service facility in San Ramon.

25       **1.    GENERAL FUNCTIONS OF THE POSTAL SERVICE.**

26       The Postal Service delivers mail on behalf of its customers in various volumes, from a

27  single piece of mail to pallets of mail in a bulk mailing (Brant Decl. ¶ 2).  To facilitate the

28  delivery of bulk mail to the post office, some postal facilities are equipped with a loading dock

and hydraulic lift (*ibid*.).  The San Ramon post office, which is the facility at issue in this action,

has a hydraulic lift (Nunez Decl. ¶ 2)  The Postal Service does not have an employee whose

*United States District Court*
For the Northern District of California

1   function is to operate the hydraulic lift.  Nor does the Postal Service have a policy or regulation

2   that requires such lifts to be operated only by Postal Service employees (Brant Decl. ¶ 2)

    The Postal Service does not provide training to outside delivery personnel regarding the

4   operation of the hydraulic lift.  The Postal Service has "promulgated materials . . . which serve as

5   general guidelines regarding the safe operation of certain postal equipment, such as hydraulic lifts

6   similar to those at the San Ramon facility" (*id*. ¶ 3).  The Postal Service does not have mandatory

7   policies or procedures directing the "content or type of instructions and[/]or warnings to be given

8   to an outside delivery person, if an employee decides to issue such warnings or instructions" (*id.* ¶

9   4).

10      **2.    INCIDENT.**

11      On August 23, 2005, plaintiff Robert Smith used a hydraulic lift at the postal facility in

12   San Ramon, and, as a result, he allegedly sustained an injury to his right leg.  At the time of the

13   alleged incident, plaintiff was employed by James Allyn Printing Company as a delivery driver,

14   and had been so employed since August 15.  As a delivery driver, he delivered materials for

15   mailing to at least three local postal facilities, one of which was the San Ramon facility (Sladden

16   Exh. C at 58).  Plaintiff drove a 2001 Isuzu NQR box truck to make his deliveries (Sladden Exh.

17   A at 7).

18      Delivery drivers who used the loading dock and hydraulic lift at the San Ramon facility

19   had to back up their delivery truck to the loading dock and align the rear bumper of the truck with

20   the rubber bumpers on the loading dock.  This would facilitate deployment of the hydraulic lift

21   and prevent the hydraulic lift lip extension from making contact with the back of the delivery

22   truck (Brant Decl. ¶ 5).

23      On the day in question, the hydraulic lift made contact with the handle of plaintiff's

24   truck's back door (Sladden Exh. C at 123).  What happened after the lift made contact with the

25   door is in dispute.  Defendant contends that Mr. Timothy Munsil, a Postal Service employee,

26   heard the lift going up and down, came out to the loading dock, saw the lift was jammed, and

27   instructed plaintiff to move his truck forward.  Plaintiff did not move the truck forward but

28   instead stepped onto the back bumper of the truck, in the path of the already moving hydraulic

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  lift.  Plaintiff was unable to move out of the way of the lift and his right leg was injured when the

2  hydraulic lift plate extended and struck the inside of plaintiff's right leg (Sladden Exh. E at 40,

3  59, 68).  On the other hand, plaintiff states that when he arrived at the San Ramon facility, he

4  went to the office to ask for help after he observed that the dock plate, part of the lift, was jammed

5  on the handle of the truck's roll-up door.  Mr. Munsil went out to assist plaintiff, saw plaintiff

6  climb on the truck's bumper, and after plaintiff was standing on the truck's bumper, the hydraulic

7  lift was activated.  The dock plate pinned plaintiff's right leg between the dock plate and the roll-

8  up door (Turnage Exh. B at 120, 167, 172, 174).

9     Plaintiff brings this action pursuant to the Federal Tort Claims Act.  The complaint alleges

10  the following claims for relief:  (1) general negligence; (2) negligent hiring; (3) negligent

11  supervision; (4) negligent maintenance; (5) strict liability; (6) negligence *per se*; (7) negligent

12  infliction of emotional distress; and (8) respondeat superior.  There was also a claim for loss of

13  consortium brought by Jodi Smith, but that claim was dismissed by Judge Saundra Brown

14  Armstrong, who previously presided over this action.  Plaintiff Robert Smith's claim for strict

15  liability was also dismissed by Judge Armstrong's order.  By order dated April 19, 2011, this

16  action was related to a previously-filed action and it was reassigned to the undersigned judge.

17     This order follows full briefing and a hearing.  At the motion hearing, government counsel

18  indicated that the parties stipulated to dismiss the claims for negligent supervision, negligent

19  hiring, and negligent infliction of emotional distress.  Those claims are dismissed and need not be

20  addressed herein.

**ANALYSIS**

21

22     Defendant United States moves for summary judgment on the following of plaintiff's

23  claims: (1) general negligence, (2) negligent maintenance, (3) negligence *per se*, and (4)

24  respondeat superior.  Defendant also moves to strike the declaration of Scott Luba, appended to

25  plaintiff's opposition brief.

26     **1.   STANDARD.**

27     Summary judgment is proper when "there is no genuine dispute as to any material fact and

28  the movant is entitled to judgment as a matter of law."  FRCP 56(a).  Where the party moving for

1    summary judgment would bear the burden of proof at trial, that party bears the initial burden of

2    producing evidence that would entitle it to a directed verdict if uncontroverted at trial.  *See C.A.R.*

3    *Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474 (9th Cir. 2000).  Where the party

4    moving for summary judgment would not bear the burden of proof at trial, that party bears the

5    initial burden of either producing evidence that negates an essential element of the non-moving

6    party's claims, or showing that the non-moving party does not have enough evidence of an

7    essential element to carry its ultimate burden of persuasion at trial.  If the moving party satisfies

8    its initial burden of production, then the non-moving party must produce admissible evidence to

9    show there exists a genuine issue of material fact.  *See Nissan Fire & Marine Ins. Co. v. Fritz*

10   *Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

11           **2.    NEGLIGENCE.**

12           Defendant seeks summary judgment on plaintiff's negligence claim and his claim for

13   negligence *per se*.  FTCA actions are governed by the substantive law of the state in which the

14   "act or omission occurred."  *Delta Savings Bank v. United States*, 265 F.3d 1017, 1025 (9th Cir.

15   2001).  The incident at issue occurred in California, thus California law governs.  To establish a

16   case for negligence under California law, a plaintiff must prove the following:  (1) a legal duty to

17   use care; (2) breach of that legal duty; and (3) that the breach of that duty was the proximate

18   cause or legal cause of the plaintiff's injury and resultant damages.  *United States Liab. Ins. Co. v.*

19   *Haidinger-Hayes, Inc., et al.*, 1 Cal. 3d 586, 594 (1970).

20           *First*, defendant contends that it is entitled to summary judgment on plaintiff's negligence

21   claim because the theory upon which plaintiff's negligence claim is premised is subject to the

22   discretionary-function exception.  *Second*, defendant argues that if the order finds plaintiff's

23   negligence claim is not barred, that defendant is still entitled to summary judgment on the

24   negligence claim because plaintiff has failed to provide sufficient evidence to establish causation.

25   *Third,* defendant contends that plaintiff's claim for negligence *per se* fails because plaintiff has

26   failed to identify a statute applicable to defendant, the breach of which caused plaintiff's alleged

27   injuries.

28

United States District Court

For the Northern District of California

4

United States District Court

For the Northern District of California

**A.      Discretionary-Function Exception.**

Defendant contends that plaintiff's theory of negligence based on the Postal Service's decision to allow non-Postal Service employees to operate the hydraulic lift is a theory of negligence subject to the discretionary-function exception.  This order agrees.

A Court may determine at any stage in the litigation that it lacks subject-matter jurisdiction.  F.R.C.P. 12(h)(3).  There is a long-standing principle that the United States, as sovereign, cannot be sued without its consent.  *United States v. Testan*, 424 U.S. 392, 399 (1976). A district court has no jurisdiction to award relief against the United States unless such relief is expressly authorized by statute.  *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).  The party who seeks to bring a suit against the federal government, has the burden of showing unequivocal waiver of immunity.  *West v. Fed'l Aviation Admin.*, 830 F.2d 1044, 1046 (9th Cir. 1987).

The Federal Tort Claims Act is the sole waiver of immunity for tort claims against the United States.  Expressly excluded from the FTCA's purview is:

> Any claim based upon an act or omission of an employee of the Government . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved the abuse.

28 U.S.C. 2680(a).  Courts are deprived of subject-matter jurisdiction over claims that fall within the discretionary-function exception.  *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). The United States bears the burden of proving that the discretionary-function exception applies. But a "plaintiff must advance a claim that is facially plausible outside the discretionary function exception in order to survive a motion to dismiss."  *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

To determine whether the discretionary-function exception applies, courts engage in a two-step inquiry.  *First*, courts must consider "whether the challenged conduct involves an element of judgment or choice."  *Second*, if it does, courts must then ask "whether the conduct implements social, economic, or political party considerations."  *Nurse*, 226 F.3d at 1001.  To fall within the discretionary function exception, "the challenged decision need not actually be grounded in policy considerations so long as it is by its nature, susceptible to a policy analysis."

United States District Court

For the Northern District of California

1    *Ibid.* "Conduct cannot be discretionary unless it involves an element of judgment of choice."

2    *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

3         The first inquiry is to determine whether the Postal Service's decision to allow non-Postal

4    Service employees to operate the hydraulic lift involved an element of choice or judgment.

5    Plaintiff argues that 29 C.F.R. 1910.132(d)(1)–(2) and (f)(2) created a mandatory duty on the

6    Postal Service to "conduct an analysis of hazards in the workplace and to put in place safety

7    procedures to address how to avoid those hazards" (Opp. 4; Dkt. No. 56-1 at 6–7).  Plaintiff is

8    incorrect.  Section 1910.2(c) states that an "[e]mployer means a person engaged in a business

9    affecting commerce who has employees, but does not include the United States or any State or

10   political subdivision of a State."  Subsections (d)(1)–(2) and (f)(2) apply to an "employer."

11   Plaintiff offers no other statutory or regulatory basis for his claim that defendant had a mandatory

12   duty to conduct an analysis of hazards in the workplace and put in place safety procedures.  By

13   way of declaration, the manager for safety and OSHA compliance programs with the Postal

14   Service stated that although the Postal Service has promulgated materials that "serve as general

15   guidelines regarding the safe operation of certain postal equipment," "the Postal Service does not

16   have mandatory policies or regulations that govern who may use or operate the hydraulic lift at

17   issue in this litigation" (Brant Decl. ¶ 3).  *See Kelly v. United States*, 241 F.3d 755, 761 (9th Cir.

18   2001) (recognizing that the existence of some manuals or policies governing safety is not

19   sufficient to eradicate the discretionary-function exception).  The Postal Service's decision to

20   allow non-Postal Service employees to operate the hydraulic lift was discretionary.

21        The next inquiry is to determine whether the Postal Service's decision to allow non-Postal

22   Service employees to operate the hydraulic lift was the kind of discretionary decision that is

23   grounded in social, economic, or political policy, and therefore intended to be shielded from suit.

24   The Postal Service exercises "discretion to determine where to allocate its human resources in

25   connection with the efficient delivery of mail including the loading and unloading of mail" (Brant

26   Decl. ¶ 2).  The Postal Service is required by law to provide "prompt, reliable, and efficient

27   services."  39 U.S.C. 101(a).  Requiring a Postal Service employee to operate the hydraulic lift, as

28   opposed to allowing non-Postal Service employees, namely delivery truck drivers, to operate it,

1   would likely impact the Postal Service's allocation of human resources.  Consequently, this is the

2   kind of decision the discretionary-function exception was intended to immunize from suit and

3   prevent judicial second guessing of administrative decisions.  *Shrum v. United States*, 2004 WL

4   1792617, at *1–2 (N.D. Cal. 2004) (Henderson, J.).

5       The Postal Service cannot be held liable under the FTCA for its decisions regarding the

6   allocation of resources.  *See Gager v. United States*, 149 F.3d 918, 921–22 (9th Cir. 1988)

7   (finding the Postal Service's decision not to provide mail-bomb training to all employees fell

8   within the discretionary-function exception because training decisions involved the allocation of

9   resources).  Plaintiff concedes that he does not challenge any policy choices of the Postal Service

10  (Dkt. No. 56-1 at 14).  The discretionary-function exception applies to this theory of negligence.

11  Defendant's motion for summary judgment as to this specific theory of negligence is **GRANTED**.

12      Because plaintiff has failed to identify a statute applicable to defendant, the breach of

13  which caused plaintiff's alleged injuries, defendant's motion for summary judgment on plaintiff's

14  claim for negligence *per se* is **GRANTED**.

15                  **B.      Failure to Warn.**

16      Plaintiff asserts that Postal Service employee Mr. Munsil's failure to warn plaintiff of the

17  dangers associated with operating the hydraulic lift was a cause of plaintiff's injuries (Opp. 9).

18  Liability will not be imposed where the plaintiff was aware of the purported dangerous condition

19  or it was obvious.  *Mawhiney v. Signal Trucking Co.*, 132 Cal. App. 2d 809, 813 (1955).

20      Defendant points to plaintiff's own testimony as evidence that plaintiff was aware of the

21  dangers associated with the hydraulic lift.  Plaintiff stated that his supervisor Ron Jaffey provided

22  him with instructions on how to operate the hydraulic lift at Bay Mirror, which he testified

23  "operate in a similar manner" to the one at San Ramon (Sladden Exh. C at 161–63).  He testified

24  that he was told where to stand when operating the lift so "you don't get hurt, so you can see, to

25  make sure it's stopped, make sure there's no movement" (*id*. at 163; *see* Sladden Suppl. Exh. G at

26  52).  It was also plaintiff's testimony that he was told "don't stand on the dock plate when it's

27  moving," to "stay behind the yellow areas," "and make sure [the dock plate] is fully engaged"

28

1   (Sladden Suppl. G at 52).  Plaintiff also testified that he had operated a lift similar to the one at

2   San Ramon more than 100 times (Sladden Exh. C at 161–62).

3        Furthermore, Mr. Munsil testified that he instructed plaintiff to move the truck forward,

4   but that plaintiff did not (Sladden Exh. E at 59).  Plaintiff testified that he did not hear Mr.

5   Munsil's instruction (Turnage Exh. B at 157).  Dr. Perez, plaintiff's expert, opined that failure to

6   move the truck forward was a cause of the accident (Sladden Exh. D at 84).  The factual dispute

7   at issue regarding whether Mr. Munsil instructed defendant to move the truck cannot be resolved

8   on this summary judgment record.  Even so, the record supports a finding that plaintiff was aware

9   of the dangers of the hydraulic lift.

10       Plaintiff also argues that the Postal Service had a duty to warn him of defects that were

11  known or should have been known to cause injury to plaintiff because he was a business invitee.

12  To show that the Postal Service was aware of an alleged defect in the lift, plaintiff puts forward

13  an inadmissible hearsay statement that his supervisor told him that there was a "short" in the lift.

14  Even if the statement was considered, which it cannot be because it is inadmissible hearsay, it

15  would go to show that plaintiff was made aware of the alleged defect, thus there could be no

16  failure to warn.  Plaintiff has not offered admissible evidence to show that at some time prior to

17  the incident in question that the Postal Service was aware or should have been aware of a defect

18  or malfunction in the lift, as is alleged.  Both of plaintiff's attempts to establish liability based on

19  the failure-to-warn theory fail.  Defendant's motion for summary judgment as to this specific

20  theory of negligence is **GRANTED**.

21              **C.     Negligence of Postal Service Employee.**

22       Plaintiff also contends Postal Service employee Mr. Munsil's negligence caused his

23  injuries.  Specifically, plaintiff argues that a cause of his injuries was Mr. Munsil's activation of

24  the hydraulic lift while plaintiff was in the lift's path.  Plaintiff offers his own testimony that Mr.

25  Munsil commenced operation of the hydraulic lift after plaintiff was already positioned in the

26  path of the hydraulic lift (Turnage Exh. B at 169).  This is disputed by defendant.  Additionally,

27  there are dueling expert opinions.  As to this claim, defendant only seeks summary judgment on

28  the ground that plaintiff cannot establish causation.  Viewing the evidence in the light most

United States District Court
For the Northern District of California

favorable to plaintiff, as courts are required to do at the summary judgment stage, the order

concludes there are materials issues of fact in dispute such that summary judgment on this claim

must be **DENIED**.

In a footnote, defendant challenges the admissibility of Dr. Perez's expert report, stating

that "pursuant to Rule 26(a)(2) . . . Mr. Perez's written report states only legal conclusions and

lacks the detail and analysis required by the Federal Rules and Order of this Court.  As such, Mr.

Perez's report is inadmissible pursuant to Rule 702" (Br. 12 n.6).  The order does not rely on the

conclusions in Dr. Perez's expert opinion, so there is no occasion to rule on the admissibility of

the report.

### 3.   RESPONDEAT SUPERIOR.

Plaintiff brings a claim for respondeat superior.  It is not clear that a claim for respondeat

superior is appropriate as a stand-alone claim given that the FTCA explicitly waives sovereign

immunity as to acts of governmental employees acting within the scope of their office or

employment.  To the extent the respondeat superior claim relies on the theory that defendant is

liable for the alleged negligence of Mr. Munsil, a Postal Service employee, energizing the

hydraulic lift, which struck and injured plaintiff (as opposed to any other theory wherein

summary judgment has been granted), the motion for summary judgment is **DENIED**.

### 4.   NEGLIGENT MAINTENANCE.

Defendant also moves for summary judgment on plaintiff's claim for negligent

maintenance.  Plaintiff asserts that defendant was "negligent in failing to properly maintain and

communicate the defect in the hydraulic lift to plaintiff, Robert Smith, creating a clear and

immediate risk of serious injury" (Compl. ¶ 35).  In support of this claim, plaintiff puts forth

inadmissible hearsay testimony stating that he was told by Mr. Luba that there was a "short" in

the lift (Turnage Exh. B at 74).  Plaintiff concedes that he has no "written evidence of problems

with the lift pre-dating this accident" (*see also supra* p. 8).  Plaintiff also testified that two or

three days before the incident he did not have any problems operating the lift (Sladden Suppl.

Exh. G at 82–83).  Plaintiff further attempts to bolster his claim for negligent maintenance by

pointing to the owner's manual for the hydraulic lift at issue in this action, which discusses steps

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    for recommended preventative maintenance, such as operating the lift through its full cycle

2    several times each week, using good grade lubricating oil, and checking the hydraulic fluid.

3    Plaintiff states that defendant has not produced any documents to document preventative

4    maintenance.  Appended to defendant's motion is a declaration by an individual who provided

5    maintenance to the hydraulic lift, stating that during his tenure, which began in 1994, he twice

6    performed "visual maintenance" of the hydraulic lift, which involved "cleaning of debris from

7    under the lift to the extent it exists" (Barch Decl. ¶ 2).

8            Plaintiff has not put forward evidence sufficient to show there exists a genuine issue as to

9    whether there was a defect.  Thus, even assuming defendant did not perform preventative

10   maintenance, there is no evidence to show that this resulted in any defect.  Defendant's motion for

11   summary judgment on this claim is **GRANTED**.

## 5.    LUBA DECLARATION.

13           Defendant moves to strike the declaration of Scott Luba appended to plaintiff's opposition

14   brief because defendant did not have the opportunity to depose Mr. Luba due to plaintiff's

15   counsel's failure to produce him for deposition or to provide defendant with his contact

16   information as required by Rules 26(a) and (e).

17           On May 10, 2011, plaintiff listed Mr. Luba as a witness in his First Amended Rule 26

18   disclosures as follows (Sladden Suppl. Exh. A at 1):

19                   Scott Luba c/o employer James Allyn Printing.  We will provide
                     you the actual address for Mr. Luba when it is located.  Mr Luba
20                   has information regarding the operation of the lift as well as the
                     delivery procedure at this post office and may have additional
21                   discoverable information.

22   On October 5, 2011, defendant attempted to serve Mr. Luba with a deposition subpoena at James

23   Allyn Printing in Dublin, California, but was unable to because Mr. Luba no longer worked there

24   (Sladden Suppl. Exh. C).  On October 19, defense counsel sent an email to plaintiff's counsel

25   stating that the subpoena was returned and reminding plaintiff's counsel that a current address

26   was needed (Sladden Suppl. Exh. D).  Plaintiff's counsel responded, indicating that the only

27   address she had for Mr. Luba was James Allyn Printing (*ibid*.).  Defense counsel responded

28   stating, she would try to obtain an address from Mr. Luba, but that she expected plaintiff's

counsel to provide one as indicated in the initial disclosures (*ibid.*).  Defense counsel also stated that she would schedule Mr. Luba's deposition for November 14, 2011 at 1:00 p.m.  Again on October 31, 2011, defense counsel requested an updated address from plaintiff's counsel and was informed that plaintiff's counsel still did not have one.

Attorney Patricia Turnage, plaintiff's counsel, has put forward a declaration under oath stating that in May 2011, she knew that Mr. Luba worked with plaintiff at James Allyn Printing and at the time of the Rule 26 disclosures, had no other address for Mr. Luba and did not have a telephone number (Turnage Suppl. Decl. ¶ 3).  Although defense counsel made her aware that she would seek to take Mr. Luba's deposition on November 14, Attorney Turnage was never served with a deposition notice.  After the October 2011 email exchanges, plaintiff's counsel "made efforts to obtain updated contact information for [Mr. Luba] but [was] unsuccessful in locating him" (*id.* at ¶ 4).  After being served with defendant's motion for summary judgment, plaintiff's counsel made additional attempts to locate Mr. Luba.  At some later time, she "obtained a new number for him," called the number, and left a voice message (*id.* ¶¶ 6, 7).  Attorney Turnage called Mr. Luba again on March 20, 2012, and was able to speak with him.  On March 21, Mr. Luba went to her office because he was in the neighborhood making a work-related delivery, and Attorney Turnage prepared a declaration for his signature  (*id.* ¶ 9).  The declaration, which was filed and served on defendant provided updated address information for Mr. Luba.  Plaintiff's counsel offered to stipulate to seek an order from the Court reopening discovery for the limited purpose of deposing Mr. Luba.  Defendant objected.

Pursuant to Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Attorney Turnage filed the Luba declaration (which included an updated address) in support of plaintiff's opposition brief on March 22, 2012, the day after she obtained the updated address.  It does seem coincidental that Attorney Turnage obtained this information the day before plaintiff's opposition brief was due, but the Court has no reason to question the truth of Attorney Turnage's declaration, which was signed under penalty of perjury.

**United States District Court**
For the Northern District of California

1  Discovery will be reopened for the limited purpose of allowing defendant to depose Mr.

2  Luba and adjust its expert report accordingly.  Mr. Luba must be deposed by **MAY 25, 2012**.

3  Defendant has until **JUNE 22** to modify its expert report, if necessary.  Both sides will bear their

4  own expenses.  The motion to strike the Luba declaration is hereby **DENIED**.

5      **6.     TWO OPPOSITION BRIEFS.**

6  Plaintiff filed two opposition briefs totaling 27 pages.  This exceeds the page limit

7  established by the Civil Local Rules.  Defendant moves to strike the supplemental opposition

8  brief.  Plaintiff must follow all rules governing practice in this federal district court.  It would not

9  be in the interest of justice to strike the supplemental opposition brief, which contains all of

10  plaintiff's legal arguments.  Thus, it will not be stricken.

11      **CONCLUSION**

12  For the reasons stated above, defendant's motion for summary judgment is **GRANTED IN**

13  **PART AND DENIED IN PART**.  The motion to strike is **DENIED**.  The only claims that remain are

14  plaintiff's negligence claim and respondeat superior claim based on the theory of the Postal

15  Service employee's negligence.  The dates for the pretrial conference scheduled for April 30,

16  2012, and the trial scheduled for May 7 are hereby **VACATED**.  Please remember that all facts

17  must be proven at trial.  This order does not establish any facts as having been proven on the

18  claims to be tried.  The pretrial conference will be held at **2:00 P.M. ON SEPTEMBER 17, 2012.**

19  Trial will begin at **7:30 A.M ON OCTOBER 1, 2012**.

20

21      **IT IS SO ORDERED.**

22

23  Dated:  April 27, 2012.

                                _____

24                                   WILLIAM ALSUP
                                 UNITED STATES DISTRICT JUDGE

25

26

27

28